**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **CASSANDRA GLOVER** | * | |
|   **Plaintiff** | * | |
|     **v.** | * | **CIVIL No. JKB-13-3192** |
| **CARROLL COUNTY SHERIFF'S** | * | |
| **DEPARTMENT, et al.,** | * | |
|   **Defendants** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff Cassandra Glover brought this suit against Detective Douglas Epperson ("Epperson"), Detective Major Nicholas Plazio ("Plazio"), Sheriff Kenneth Tregoning ("Tregoning"), Major Philip Kasten ("Kasten"), the Carroll County States Attorney's Office ("CCSAO"), State's Attorney Jerry Barnes ("Barnes"), Deputy State's Attorney David Daggett ("Daggett"), Deputy State's Attorney Kelly Galvin ("Galvin"), the Town of Hampstead ("Hampstead"), Officer Christina Holland ("Holland"), Corporal Robert Riggio ("Riggio"), and the State of Maryland ("Maryland")[1] alleging violations of her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and alleging the following state-law torts: (1) false imprisonment, (2) malicious prosecution, (3) violation of Article 26 of the Maryland Declaration of Rights, (4) battery, (5) false arrest, (6) violation of Article 24 of the Maryland Declaration of Rights, (7) assault, (8) abuse of process, and (9) violation of Article 22 of the Maryland Declaration of Rights. (Am. Compl., ECF No.

---

[1] In addition, the following parties have already been dismissed from this case: Carroll County Sheriff's Department (terminated 11/12/2013), Carroll County States Attorneys Office (as distinguished from Carroll County States Attorney's Office) (terminated 11/12/2013), and Hampstead Police Department (terminated 11/12/2013).

22.)  Now pending before the Court are (A) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4), (B) Holland and Riggio's motion to dismiss (ECF No. 11), (C) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25), (D) Holland and Riggio's motion to dismiss (ECF No. 26), (E) Barnes, CCSAO, Daggett, Galvin, and Maryland's motion to dismiss (ECF No. 27), and (F) Hampstead's motion to dismiss (ECF No. 35).[2]  The issues have been briefed and no hearing is required.  Local Rule 105.6.  For the reasons set forth below (A) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4) will be found moot, (B) Holland and Riggio's motion to dismiss (ECF No. 11) will be found moot, (C) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25) will be granted in part and denied in part, (D) Holland and Riggio's motion to dismiss (ECF No. 26) will be granted in part and denied in part, (E) Barnes, CCSAO, Daggett, Galvin, and Maryland's motion to dismiss (ECF No. 27) will be granted, and (F) Hampstead's motion to dismiss (ECF No. 35) will be granted.

I.     BACKGROUND[3]

Plaintiff has incorporated by reference five exhibits into her complaint.  (Am. Compl.; ECF Nos. 2-1, 2-2, 2-3, 2-4, 2-5.)  These exhibits are (1) two state court memorandum opinions, namely the July 21, 2011 opinion by Judge Galloway of the Circuit Court for Carroll County, Maryland in the matter of *Maryland v. Laderer*, case no. 06-K-10-040718 (ECF No. 2-1) and the August 11, 2011 opinion in the same matter (ECF No. 2-2), (2) a transcript of Epperson's October 27, 2011 testimony in the same matter (ECF No. 2-3), (3) an interoffice memorandum discussing prior statements by Epperson regarding Plazio (ECF No. 2-4), and (4) Plaintiff's

---

[2] The Court has omitted the names of parties that originally joined in these motions but have since been terminated.
[3] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

motion to dismiss the indictment in the matter of *Maryland v. Glover*, case no. K-10-40719 before the Circuit Court for Carroll County, Maryland (ECF No. 2-5). The Court will treat factual statements—but not legal analysis or legal conclusions—contained in these exhibits as part of the factual allegations of Plaintiff's complaint. The Court emphasizes that these factual statements will be treated as *allegations* by Plaintiff and are not received as facts.[4]

The following factual allegations are excerpted from the July 21, 2011 memorandum opinion (ECF No. 2-1):

> On September 13, 2010, at approximately 10:07pm, Officer Holland of the Hampstead Police Department responded to a 911 call to 4041 Gill Avenue, Hampstead, Carroll County, Maryland. The address includes apartment buildings. The 911 call came in initially as a cardiac arrest at the Gill Avenue address. When Office[r] Holland arrived at the address, she saw Mr. Demario lying on the landing of the staircase. Patricia Winters . . . was performing CPR on Mr. Demario. Teresa Utz and Clarence Edwards were observing the scene. When the paramedics arrived at the scene, Officer Holland was informed that Mr. Demario was stabbed. . . . No weapons were found at the crime scene or in Mr. Demario's possession.
>
> Officer Holland began to secure the scene and interview witnesses. Officer Holland interviewed Ms. Winters who informed her that earlier in the day, [Mr. Laderer], [Plaintiff] and Mr. Demario had a "confrontation." Officer Holland indicated that . . . she did not obtain any further information at that time from Ms. Winters about what she meant by "confrontation." Based on the information given to Officer Holland by Ms. Winters, [Mr. Laderer] and [Plaintiff] were listed as suspects along with . . . Eric Baker through the Emergency Operations Center.
>
> At 11:02 pm, Officer Holland testified that she observed [Mr. Laderer] and [Plaintiff] walking toward the apartment complex. Officer Holland did not observe any blood on their clothing. She did not observe anything that would indicate the couple were a flight risk or that they were armed and dangerous. [Mr. Laderer] approached the officers on the scene and attempted to engage the officers in conversation about what was happening. . . . [Officers Holland and Riggio then stopped Plaintiff and Mr. Laderer, handcuffed them, and told them to sit on the curb while they and other Hampstead police officers secured the scene and waited for the Carroll County Sheriff's Department and Maryland State Police to arrive. (Am. Compl. at ¶¶ 17, 18.)] Officer Holland informed [Mr.

---

[4] Plaintiff's use of incorporation by reference in this case is excessive. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1326 (3d ed.) ("Excessive incorporation by reference can be problematic.") As a result, the Court may be going further than it should in construing allegations in an attorney-drafted complaint. However, ultimately, the interests of justice are best served by proceeding in this manner.

Laderer] and [Plaintiff] that they were not under arrest, but they were being detained for the investigation.

Officer Holland . . . did not pat down [Mr. Laderer] or [Plaintiff] for weapons. Officer Holland did not question [Mr. Laderer] or [Plaintiff] while they were handcuffed and seated on the ground. . . . [Plaintiff] repeatedly requested permission to go to the bathroom from Hampstead police officers as she was not free to leave, but her requests were denied. (Am. Compl. at ¶ 19.)

Detective Epperson . . . was assigned as lead investigator in this case. [He] arrived at the scene at 11:29 pm. He was informed that [Mr. Laderer] and [Plaintiff] had been detained since 11:02 pm. Ms. Winters provided Detective Epperson [with] more details about the "confrontation" [Mr. Laderer] and [Plaintiff] had with Mr. Demario. Ms. Winters stated that one hour before discovering Mr. Demario lying on the steps, she was having a conversation with him. [Mr. Laderer] and [Plaintiff] walked past them. Before entering her apartment, [Plaintiff] yelled something at the direction of Mr. Demario and then she slammed the door shut. Detective Epperson learned that Mr. Baker physically assaulted Mr. Demario in the past and threatened to kill him. At 12:02 am. Mr. Baker arrived at the scene and was placed in handcuffs and was being "detained" at the scene as well. . . . [At approximately 1:30 am, Detective Epperson ruled out Mr. Baker as a suspect and released him.]

(ECF No. 2-1 at 2-5.)

Plaintiff remained handcuffed on the curb for five hours until she was transported to an interrogation room at about 4:00 am on September 14, 2010. (Am. Compl. at ¶ 21.) She was then interrogated for an additional five hours by Epperson. (*Id.* at ¶ 22.) During this interrogation, Plaintiff invoked her right to counsel on six occasions and was visibly sick, vomiting twice. (*Id.* at ¶ 23.)

At about 4:12 am, when Epperson began questioning Plaintiff, she gave Epperson some general information about herself. (ECF No. 2-2 at 3.) Epperson then informed Plaintiff of her *Miranda* rights but told her that some of those rights did not apply to her because he had not charged her with a crime. (*Id.*) After Plaintiff's third request for an attorney, Epperson stopped questioning her but was subsequently ordered to reinterview Plaintiff by Plazio. (Am. Compl. at ¶ 24; ECF No. 2-3 at page 22 lines 19-24.) At 9:04, Epperson reentered the room and took a full

statement. (Am. Compl. at ¶ 26.) At that time, he did not inform Plaintiff of her *Miranda* rights again. (*Id.*)

During Plaintiff's interrogation, Epperson expressed to Plazio, Kasten, and Tregoning his concerns about the legality of continuing to question Plaintiff after she invoked her right to counsel and continuing to detain Plaintiff. (*Id.* at ¶ 27; *see also* ECF No. 2-4.) Epperson also voiced concerns to Tregoning, Galvin, and Daggett after Plaintiff's interrogation. (Am. Compl. at ¶ 28.) Epperson's concerns were memorialized in a memorandum authored by Corporal Walter Dayton on November 10, 2011. (*Id.* at ¶ 29; ECF No. 2-5 at 7.) This memorandum was not turned over to Plaintiff or her counsel until March 1, 2012. (Am. Compl. at ¶ 31.) Further, Barnes, Galvin, and Daggett withheld exculpatory evidence and failed to disclose to Plaintiff "constitutional violations, namely illegal detention, seizure and interrogation procedures used against Plaintiff." (*Id.* at ¶ 34.)

Plaintiff was charged on October 7, 2010 in a single count indictment "with Accessory After the Fact To Murder" and spent seventeen days incarcerated at the Carroll County Detention Center until she was able to post bond. (*Id.* at ¶ 35; ECF No. 2-5 at 3.) In February and March, 2011, the Circuit Court for Carroll County held a hearing on "[Plaintiff-] Defendant [Glover's] Motion to Suppress Evidence and Statements." (ECF No. 2-15 at 3.) On April 5, 2011, before the court issued a ruling on Plainitff's motion to suppress, as part of a plea agreement with the State, Plaintiff "entered a Not Guilty Statement of Facts (NGSF) plea to a single count of Obstructing and Hindering an Investigation." (*Id.* at 3-4.) "The [Circuit] Court [for Carroll County] accepted the plea, and [Plaintiff's] sentencing was postponed to a date to occur after the trial of [Mr.] Laderer." (*Id.*)

On October 11, 2011, Plaintiff filed a "Motion to Withdraw Not Guilty Statement of Facts Plea or, in the alternative, for New Trial." (*Id*. at 4.) The Circuit Court held a hearing on this motion in February and March, 2012. (*Id.* at 5.) During this hearing, Epperson admitted that his testimony at Plaintiff's suppression hearing had not been truthful and stated that "he had revealed to Assistant State's Attorneys Kelley Galvin, David Daggett, and possibly others in the Carroll County State's Attorney's Office, prior to the Glover suppression hearings, that he knowingly and intentionally interrogated Ms. Glover after she invoked because he was ordered to do so by command staff—specifically, by Major Nicholas A. Plazio, his immediate superior." (*Id.* at 6.) The State conceded Plaintiff's motion for a new trial and the Court granted it, as well as a motion to disqualify Ms. Galvin from prosecuting Plaintiff. (*Id.* at 5.) Finally, on March 7, 2012, the State entered a *nolle prosequi* as to all charges against Plaintiff. (*Id.*at ¶ 36.)

As a result of the State's actions, Plaintiff has "lost jobs, repeatedly been threatened, has and is being followed and otherwise has no peace and continues to suffer." (*Id.* at ¶37.)

Plaintiff filed the present lawsuit in the Circuit Court for Carroll County, Maryland on August 23, 2013. (ECF No. 2.) Defendants removed the action to this Court on October 28, 2013. (ECF No. 1.) On November 12, 2013, Plaintiff filed an amended complaint. (ECF No. 22.) Presently before the Court are (A) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4), (B) Holland and Riggio's motion to dismiss (ECF No. 11), (C) Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25), (D) Holland and Riggio's motion to dismiss (ECF No. 26), (E) Barnes, CCSAO, Daggett, Galvin, and Maryland's motion to dismiss (ECF No. 27), and (F) Hampstead's motion to dismiss (ECF No. 35).

## II.     LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### a. Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4) and Holland and Riggio's motion to dismiss (ECF No. 11)

Both Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4) and Holland and Riggio's motion to dismiss (ECF No. 11) were filed before Plaintiff filed her amended complaint. (Am. Compl.) As a technical matter, these two motions to dismiss are mooted by the filing of Plaintiff's amended complaint (Am. Compl.), which supersedes the original complaint. In cases like the present one, where the amended complaint is similar to the original complaint, this Court ordinarily gives defendants an opportunity to advise it of whether the motion to dismiss should be considered in relation to the amended complaint or whether defendants would like an opportunity to file a revised motion to

dismiss that specifically addresses the amended complaint. Here, however, Defendants took it upon themselves to file new motions with the Court, namely Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25) and Holland and Riggio's motion to dismiss (ECF No. 26).

Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25) specifically addresses the amended complaint. (*See* ECF No. 25 at 3.) Therefore the Court shall consider Epperson, Kasten, Plazio, and Tregoning's original motion to dismiss or in the alternative for a more definite statement (ECF No. 4) as moot and deny it as such.

Holland and Riggio's motion to dismiss (ECF No. 26) incorporates by reference the memorandum of grounds and authorities filed along with their initial motion to dismiss (ECF No. 11-1.) The Court will therefore consider Holland and Riggio's original motion to dismiss (ECF No.11) as moot and will deny it as such but will consider Defendants' memorandum of grounds and authorities (ECF No. 11-1) as part of their second motion to dismiss (ECF No. 26).

### b. Defendant Carroll County States Attorney's Office ("CCSAO")

Although the CCSAO is named as a defendant in this case, it is not named in any count of Plaintiff's complaint. (Am. Compl.) Plaintiff has conceded that her complaint fails to state a claim against the CCSAO. (ECF No. 30 at 7.) Therefore, the Court shall grant Barnes, CCSAO, Daggett, Galvin, and Maryland's motion to dismiss (ECF No. 27) as to Defendant CCSAO on the basis that the complaint (Am. Compl.) fails to state a claim against the CCSAO.

### c. Section 1983 claims against Maryland and against Epperson, Plazio, Tregoning, and Kasten in their official capacities (Counts IX, X, XII)

Plaintiff's federal claims, pursuant to § 1983, against Defendant Maryland, as well as against Defendants Epperson, Plazio, Tregoning, and Kasten in their official capacities are

barred by the fact that Maryland and Defendants Epperson, Plazio, Tregoning, and Kasten in their official capacities are not "persons" within the meaning of § 1983. Indeed, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Here, Defendant Tregoning, the Carroll County Sheriff, Defendant Kasten, a Major in the Carroll County Sheriff's Department, Defendant Epperson, a Detective in the Carroll County Sherriff's Department, and Defendant Plazio, a Detective Major in the Carroll County Sherriff's Department, are all state officials. *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) ("Accordingly this Court concludes that the St Mary's County Sheriff and his Deputies are state officials *when acting in their law enforcement capacities*. It follows that the official capacity claims raised against Voorhaar and Alioto under § 1983 are barred by the Eleventh Amendment.") (Emphasis added). *See Hovatter v. Widdowson*, No. Civ. CCB-02-2904, 2004 WL 2075467 at *4 (D. Md. Sept. 15, 2007) ("Judges in this court have found that sheriffs and their deputies are state officials, and thus not subject to suit under § 1983.") (collecting cases). *See also* Md. Const. art. IV § 44 (designating Maryland county sheriffs as state constitutional officials); *Rucker v. Harford County*, 558 A.2d 399, 407 (Md. 1989) (holding that sheriffs and their deputies are state employees as a matter of Maryland law). *But see Doston v. Chester*, 937 F.2d 920, 927-933 (4th Cir. 1991) (The court held that depending on the particular function a Maryland County Sheriff is performing, he may sometimes be a county employee in addition to, or instead, of a state employee. Specifically, the court found that "[t]he Sheriff held the final policymaking authority *for the County* over the operation and management of the County Jail.") (Emphasis added); *Durham v. Somerset County, Maryland*, No. WMN-12-2757, 2013 WL 1755372 at *3 n.3 (D. Md. April 23, 2013) (holding that in an action regarding a Sheriff's

decision to terminate the employment of a Deputy Sheriff, the Sheriff *may* not be a state official for purposes of § 1983). Therefore, Count IX will be dismissed as to Defendants Epperson and Plazio in their official capacities, Count X will be dismissed as to Defendant Maryland and as to Defendants Kasten and Tregoning in their official capacities,[5] and Count XII will be dismissed as to Defendants Kasten and Tregoning in their official capacities.

### d. Count IX (Violation of rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution) against Defendants Epperson, Plazio, Holland, and Riggio

In Count IX, Plaintiff alleges that Defendants Epperson, Plazio, Holland, and Riggio violated 42 U.S.C. § 1983 by depriving her of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, namely the rights "not to have her person or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of her liberty without due process of law, not to be summarily punished or be compelled to be a witness against herself." (Am. Compl. at ¶ 84.) Defendants Epperson, Plazio, Holland, and Riggio have asked the Court to dismiss Count IX on the basis that Plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); (ECF Nos. 25, 26.)[6,7]

A claim under 42 U.S.C. § 1983 has four requirements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a person (4) who acted under color of any statute, ordinance, regulation, custom or usage, of any State . . . ." 1 Martin A. Schwartz, *Section 1983 Litigation:*

---

[5] Plaintiff concedes this issue with regard to Defendant Maryland. (ECF No. 30 at 5.)
[6] The Court notes that Epperson, Kasten, Plazio, and Tregoning have not filed a reply to Plaintiff's response (ECF No. 28) to their motion to dismiss (ECF No. 25). The deadline for filing a reply, namely December 23, 2013, has passed.
[7] The Court notes that Holland and Riggio have not filed a reply to Plaintiff's response (ECF No. 29) to their motion to dismiss (ECF No. 26). The deadline for filing a reply, namely December 26, 2013, has passed.

*Claims and Defenses* § 1.04[A] (4th ed. 2013 suppl.) (collecting cases). Further, where a suit is against a government official in his official capacity, as opposed to his individual capacity, there is a fifth element, namely that the violation of Plaintiff's federal right was attributable to enforcement of a municipal policy, practice, or custom. *Id.* Here, Plaintiff has sued Defendants Epperson, Plazio, Holland, and Riggio in both their individual and official capacities. (Am. Compl. at ¶¶ 6, 7, 10, 11.)

The Court begins by evaluating Plaintiff's claim that she was "unlawfully searched, seized, detained in an unreasonable manner." (Am. Compl. at ¶ 84.) As the Fourth Amendment provides an explicit source of textual protection against government seizure, it provides the frame of analysis for Plaintiff's claim that she was unlawfully searched and seized. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

The first step in any Fourth Amendment analysis is determining whether there was a seizure. In resolving this first step, the "crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). Here, it is clear Plaintiff was seized. She was handcuffed by Holland and Riggio, who informed her that she was being detained; she was not at liberty to leave and use a restroom; and she was transported to the Northern Carroll County Sheriff's substation and held there during the course of her interrogation. (Am. Compl. ¶¶ 17-21; ECF Nos. 2-1 at 2-5 and 28 at 9-10.)

The second step is determining whether the seizure was reasonable. The Court takes note that Defendants repeatedly stated that Plaintiff was not under arrest but was being held for

investigatory purposes.  (*See*, *e.g.*, ECF Nos. 2-1 at 2-5 and 2-2 at 3.)  However, because of its duration, the seizure was, in fact, not a mere investigatory stop.  The Fourth Amendment permits an officer to make an investigative detention or stop only if supported "by a reasonable and articulable suspicion that the person seized is engaged in criminal activity."  *United States v. Foster*, 643 F.3d 243, 246 (4th Cir. 2011) (quoting *Reid v. Georgia*, 448 U.S. 438, 440 (1980)).  Further, as the Supreme Court articulated in *United States v. Place*, "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion."  462 U.S. 696, 709 (1983).  There, the Court noted, "we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case."  *Id.* at 709-10.

Here, a witness—Ms. Winters—provided Defendant Holland and later Defendant Epperson with information about a prior confrontation between Plaintiff and the victim, Mr. Demario.  (ECF No. 2-1 at 2-5.)  While it is a close call whether such information satisfies the "reasonable and articulable suspicion" test, the Court is inclined to find that it does.  However, the length of the Plaintiff's initial seizure—five hours at the crime scene and another five hours in the interrogation room—clearly precludes the application of the reasonable suspicion standard. (Am. Compl. at ¶ 21.)

The Court therefore evaluates the reasonableness of Plaintiff's warrantless seizure under the "probable cause" standard.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *U.S. v.*

*Carillo-Rivas*, 438 Fed. Appx. 227, 228 (4th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). While the Court has found, for purposes of deciding this motion, that the information provided by Ms. Winters to Defendants Holland and Epperson satisfies the reasonable suspicion test, such information falls far short of constituting probable cause. Thus, based on the facts as alleged in Plaintiff's complaint (Am. Compl.), and solely for the purpose of deciding this motion to dismiss, the Court concludes that Defendants Epperson, Plazio, Holland, and Riggio lacked probable cause to seize Plaintiff and violated her Fourth Amendment rights when they seized her on September 13, 2010 and detained her for ten hours, first at 4041 Gill Avenue, Hampstead, Carroll County, Maryland and then at the Northern Carroll County Sheriff's substation. (ECF No. 2-1 at 2-5.)

With regard to this § 1983 claim, Defendants Epperson and Plazio have asserted that "no false arrest claim has been stated against Epperson or Plazio, and no false imprisonment claim has been stated against Plazio." (ECF no. 25 at 7.) However, the Court finds that Plaintiff has pled sufficient facts to set forth a colorable claim that Defendants Epperson and Plazio's actions were proximate causes of the violation of her Fourth Amendment rights. 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 1.04[A] (4th ed. 2013 suppl.) (collecting cases). Indeed, although Holland and Riggio were the arresting officers, Epperson interrogated Plaintiff when she was brought back to the station, and, during this interrogation, she remained detained. (ECF No. 2-2 at 3.; Am. Compl. at ¶ 24; ECF No. 2-3 at page 22 lines 19-24.) Further, even though Defendant Riggio did not personally interrogate Plaintiff, Plaintiff has adequately alleged that Riggio proximately caused her continued detention absent probable cause when he ordered Epperson to reinterview Plaintiff. (Am. Compl. at ¶ 24; ECF No. 2-3 at page 22 lines 19-24)

Given that there is no disagreement that Defendants Epperson, Plazio, Holland, and Riggio were acting under color of law, the Court finds that Plaintiff has adequately pled her § 1983 claim for violation of her Fourth Amendment rights against Defendants Epperson, Plazio, Holland, and Riggio, in their *individual capacities*.

Further, the Court finds that Defendants Epperson, Plazio, Holland, and Riggio are not entitled to qualified immunity. Indeed, it is clearly established that police officers are not at liberty to arrest citizens absent probable cause. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). It is also clearly established that a ten-hour stop—or even a five-hour stop, if one counts only the amount of time Plaintiff remained handcuffed at the crime scene—does not constitute an investigatory stop in a situation like the one at issue here. *Place*, 462 U.S. at 709-10.

However, the Court finds that Plaintiff's claim against Epperson, Plazio, Holland, and Riggio in their *official capacities* must be dismissed. Indeed, as explained above, Epperson and Plazio, respectively a Detective and a Detective Major in the Carroll County Sheriff's Office (Am. Compl at 1 and ¶¶ 6, 7), are state officials and therefore claims against them are barred by the fact that they are not, in their official capacities, "persons" within the meaning of § 1983.

With regard to the claims against Holland and Riggio in their official capacities, in *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir 1994), the Fourth Circuit established three elements that a plaintiff must adequately plead to maintain a § 1983 claim against a municipal entity or its individually-named agents sued in their official capacities: (1) the existence of an official policy or custom that (2) is fairly attributable to the municipality and (3) proximately caused the underlying constitutional violation. *Id. See also Monnell v. Department of Social Services of the City of New York*, 436 U.S. at 690 n.55. While there are a number of

ways in which a court may find evidence of a municipal policy or custom, "§ 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *Lanford v. Prince George's County, Maryland*, 199 F. Supp. 2d 297, 304-05 (D. Md. 2002). Here, Plaintiff has pled *no* facts to support the contention that the violation of her Fourth Amendment rights was attributable to enforcement of a municipal policy or custom and therefore, her Fourth Amendment claim against Defendants Holland and Riggio in their official capacities must be dismissed.

The Court now turns to Plaintiff's claim that Defendants Epperson, Plazio, Holland, and Riggio deprived her of "her liberty without due process of law." (Am. Compl. at ¶ 84.) The Fourteenth Amendment "guarantees meaningful access to courts" and "the opportunity to communicate privately with an attorney is an important part of that meaningful access." *Glisson v. Sangamon County Sheriff's Department*, 408 F. Supp.2d 609 (C.D. Ill. 2006) (quoting *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980)). In order to "prove a violation of this right, a Plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *Id.* (quoting *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000)).

Here, Plaintiff has alleged she was denied the opportunity to communicate privately with an attorney. (*See, e.g.*, Am. Compl. at ¶ 23.) However, Plaintiff has not alleged that state action hindered her efforts to pursue any nonfrivolous legal claim. Further, she has failed to allege any concrete injury that resulted from being denied the opportunity to communicate privately with an attorney. Indeed, the Court finds that although Plaintiff was denied an attorney during her interrogation, this denial did not lead to her being detained longer than she would have been

otherwise. Although Plaintiff's allegations are somewhat vague, the Court understands that, after her interrogation, Plaintiff was able to communicate with counsel and yet remained incarcerated for seventeen days. In fact, it was only after she was able to borrow money to post bond that Plaintiff was released from custody. (*Id.* at ¶ 35.) The Court will therefore grant Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25) and Holland and Riggio's motion to dismiss (ECF No. 26) with regard to the claim that Plaintiff was deprived of "her liberty without due process of law." (Am. Compl. at ¶ 84.)

Next, the Court turns to Plaintiff's allegation that Defendants Epperson, Plazio, Holland, and Riggio deprived her of the right "not to be summarily punished." (Am. Compl. at ¶ 84.) In this Circuit, "excessive force claims of a pretrial detainee [or arrestee] are governed by the Due Process Clause of the Fourteenth Amendment." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (quoting *Young v. Prince George's County, Maryland*, 355 F. 3d 751, 758 (4th Cir. 2004)). Indeed, the Fourth Amendment only governs claims of excessive force "during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997). Where the excessive claim force arises once Plaintiff has become an arrestee, the Court must evaluate the claim under the Fourteenth Amendment. *Orem*, 523 F.3d at 446.

Here, Plaintiff's claims that she was summarily punished—namely that she was denied the use of a bathroom for five hours while she sat, handcuffed, on the curb (Am. Compl. at ¶ 19), that while in the interrogation room at the Sheriff's Department, she was kept shackled with cuffs and leg restraints (*Id.* at ¶ 25), and that during the interrogation she was visibly sick, vomiting twice (*Id.* at ¶ 23)—all arose after she was handcuffed, told to sit on the curb, and informed that she was not free to leave. (Am. Compl. at ¶¶18, 19). Therefore, they occurred

after she was seized and the Court must apply the Fourteenth Amendment standard. *See Orem*, 523 F.3d at 446 ("The point at which Fourth Amendment protections and Fourteenth Amendment protections begin is often murky. But here, Orem's excessive force claim arises during her transport [in the police vehicle to the Eastern Regional Jail], after she was arrested. While she had not been formally charged, her status as arrestee requires application of the Fourteenth Amendment to her claim.")

Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Sawyer v. Asbury,* 537 F. App'x 283, 290 (4th Cir. 2013) ( quoting *Carr v. Deeds,* 453 F.3d 593, 605 (4th Cir.2006)) (citations and some internal quotation marks omitted). "'The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (internal quotation marks omitted). The Court notes that no particular extent of physical injury is required to establish an excessive force claim under the Fourteenth Amendment. *Sawyer*, 537 F. App'x at 290 (citing *Wilkins v. Gaddy,* 559 U.S. 34 (2010)).

Here Plaintiff's allegations are insufficient to support a claim that Defendants violated her Fourteenth Amendment right not to be subject to excessive force. Although Plaintiff has alleged that she "repeatedly requested and was denied the use of the bathroom" for five hours (Am. Compl. at ¶ 19), such an allegation, by itself, does not establish that Defendants inflicted "pain and suffering" on Plaintiff or that they acted "for the very purpose of causing harm."[8] Similarly, her allegation that she was "visibly sick, vomiting twice" is also insufficient. (Am.

---

[8] The Court notes that in one of her filings, Plaintiff claims that she "soiled herself." (ECF No. 29 at 3.) However, this fact does not appear to be alleged anywhere in Plaintiffs' lengthy complaint. (Am. Compl.) In one of the exhibits incorporated into her complaint, Plaintiff alleges that Mr. Laderer soiled himself. (ECF No. 2-1 at 6.) However, nowhere does she allege that *she* soiled herself.

Compl. at ¶ 23.) Plaintiff has not alleged that Defendants caused her to be ill, failed to secure necessary medical attention, or otherwise inflicted "pain and suffering" on Plaintiff or acted "for the very purpose of causing harm." Finally, Plaintiff's allegation that she was "re-shackled, in hand cuffs and leg restraints" (Am. Compl. at ¶ 25) also fails to support a claim that her Fourteenth Amendment rights were violated. Accordingly, Plaintiff's claim that she was "summarily punished" in violation of her Fourteenth Amendment rights shall be dismissed.

Plaintiff's last claim in Count IX is that Defendants Epperson, Plazio, Holland, and Riggio "compelled [her] to be a witness against herself." (Am. Compl. at ¶ 84.) It is well-established that the "core of the guarantee against compelled, self-incriminating testimony is the exclusion of such evidence." *Chavez v. Martinez*, 538 U.S. 770, 777 (2003) (Souter, J., concurring). However, where an individual's compelled, self-incriminating testimony is introduced against him at trial, in violation of his Fifth Amendment rights, he may bring an action pursuant to § 1983. *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir 2005) ("Burrell's Fifth Amendment section 1983 claim fails to state a claim. He does not allege any *trial* action that violated his Fifth Amendment rights.") (citing *Chavez*, 538 U.S. at 770). Further, a plaintiff *may* have a cause of action for violation of his Fifth Amendment right under § 1983 where he can make a "powerful showing" that the adoption of a new prophylactic rule in support of the Fifth Amendment—namely the attachment of civil liability to police interrogations—would be "necessary in aid of the basic [constitutional] guarantee [against self-incrimination]." *Id.* (quoting *Chavez*, 538 U.S. at 778-79 (Souter, J.)).

Here, Plaintiff has not alleged that any compelled, self-incriminating testimony was introduced against her at trial. In fact, on March 7, 2012, the prosecution entered a statement of

*nolle prosequi* as to all charges against Plaintiff.[9] (Am. Compl. at ¶ 36.) Further, Plainitiff has made no "powerful showing" that her § 1983 claim is "necessary in aid of the basic [constitutional] guarantee [against self-incrimination]." *Burrell*, 395 F.3d at 514. Accordingly, Plaintiff's claim that she was "compelled to be a witness against herself" in violation of her Fifth Amendment rights shall be dismissed. (Am. Compl. at ¶ 84.)

For all of these reasons, with regard to Count IX, Epperson and Plazio's motion to dismiss or in the alternative to bifurcate (ECF No. 25) and Holland and Riggio's motion to dismiss (ECF No. 26) will be denied as to Plaintiff's Fourth Amendment claim against Defendants Epperson, Plazio, Holland and Riggio in their personal capacities. (Am. Compl. at ¶ 84.) However, Epperson and Plazio's motion to dismiss or in the alternative to bifurcate (ECF No. 25) and Holland and Riggio's motion to dismiss (ECF No. 26) will be granted as to the remaining claims in Count IX.

      **e.  Count X (Violation of rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution) against Defendants Maryland, Tregoning, and Kasten under a theory of municipal liability**

In Count X, Plaintiff alleges that Defendants Maryland, as well as Defendants Tregoning and Kasten, in both their personal and official capacities, violated 42 U.S.C. § 1983 by depriving her of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, namely the rights "not to have her person or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of her liberty without due process of law, not to be summarily punished or be compelled to be a witness against herself." (Am. Compl. at ¶¶ 92, 93.) In particular, Plaintiff alleges that Defendants Maryland, Tregoning, and Kasten deprived her of these rights by "establishing, executing, implementing, enforcing, directing,

---

[9] The Court notes that prior to the prosecution's decision not to pursue the charges against Plaintiff, she entered a plea of not guilty with an agreed statement of facts. (ECF No. 2-5 at 3.) However, this plea is a legal nullity in light of the fact that the Circuit Court granted her motion to withdraw her plea. (*Id.* at 4-5.)

supervising and/or controlling policies, customs, practices, usages, and procedures to be used by police officials of the Carroll County Sheriff's Department." (*Id.* at ¶ 93.) The caption to Count X notes that the claim is brought under a theory of "municipal liability." (*Id*. at 18.)

The Court first turns to Plaintiff's claims against Defendant Maryland, as well as against Defendants Tregoning and Kasten in their official capacities. As previously explained, such claims are barred by the fact that Maryland and Defendants Tregoning and Kasten, as state officials sued in their official capacities, are not "persons" within the meaning of § 1983.

The Court next turns to Plaintiff's claim against Defendants Kasten and Tregoning in their personal capacities. In her caption to Count X, Plaintiff specifies that her cause of action is brought under a theory of municipal liability.[10] (Am. Compl. at 18.) Municipal liability under § 1983 is well established. *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981); *Owen v. City of Independence*, 445 U.S. 622 (1980); *Monnell v. Department of Social Services*, 436 U.S. 658 (1978). However, as the name suggests, municipal liability only applies where a plaintiff is suing a municipal entity. Plaintiff cannot sue Defendants Kasten and Tregoning in their individual capacity under a theory of municipal liability. Further, as the Court explained above, Plaintiff cannot sue against Defendants Kasten and Tregoning in their official capacity under § 1983.

Therefore, with regard to Count X, Defendant Maryland's motion to dismiss for failure to state a claim (ECF No. 27) and Defendants Kasten and Tregoning's motion to dismiss or, in the alternative, to bifurcate (ECF No. 25) will be granted. Count X will be dismissed.

> **f. Count XI (Violation of rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution) against Defendant Hampstead under a theory of municipal liability**

---

[10] In contrast, in Count XII Plaintiff alleges that Defendants Tregoning and Kasten violated her constitutional rights under a theory of *supervisor liability*. (Am. Compl. at 22.)

In Count XI, Plaintiff alleges that Hampstead violated 42 U.S.C. § 1983 by depriving her of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, namely the rights "not to have her person or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of her liberty without due process of law, not to be summarily punished or be compelled to be a witness against herself." (Am. Compl. at ¶¶ 100, 101.)  In particular, Plaintiff alleges that Defendant Hampstead deprived her of these rights by "establishing, executing, implementing, enforcing, directing, supervising and/or controlling policies, customs, practices, usages, and procedures to be used by police officials of the Hampstead Police Department." (*Id.* at ¶ 102.)

In order to establish municipal liability under § 1983, a plaintiff must show that his injuries stem from the municipality's "policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Santos v. Frederick County Board of Commissioners*, 725 F.3d 451 470 (4th Cir. 2013) (quoting *Monell*, 436 U.S. at 694). While there are a number of ways in which a court may find evidence of a municipal policy or custom, "§ 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *Lanford v. Prince George's County, Maryland*, 199 F. Supp. 2d 297, 304-05 (D. Md. 2002).  Here, Plaintiff has failed to allege any "plausible facts supporting [the existence of] . . . a policy or custom." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012).  Indeed, Plaintiff has provided no more than a naked assertion that her injuries stem from Hampstead's "policies, customs, practices, usages, and procedures." (Am. Compl. at ¶ 102.)  As a result, the Court will grant Defendant Hampstead's motion to dismiss Count XI. (ECF No. 35.)  Count XI will be dismissed.

### g. Count XII (Violation of rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution) against Defendants Tregoning, and Kasten under a theory of supervisor liability

In Count XII, Plaintiff alleges that Defendants Tregoning and Kasten in both their personal and official capacities, violated 42 U.S.C. § 1983 by depriving her of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, namely the rights "not to have her person or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of her liberty without due process of law, not to be summarily punished or be compelled to be a witness against herself." (Am. Compl. at ¶¶ 109, 110.) In particular, Plaintiff alleges that Defendants Tregoning, and Kasten deprived her of these rights by "failing to take proper supervisory action." (*Id.* at ¶ 109.) The caption to Count XII notes that this claim is brought under a theory of "supervisor liability." (*Id.* at 22.)

In their motion to dismiss, Defendants Tregoning and Kasten argue that Count XII should be dismissed for failure to state a claim. (ECF No. 25-1 at 14.) In particular, they state that "Plaintiff's skeletal allegations of supervisory liability are insufficient." (*Id.*)

The Court will dismiss Count XII against Defendants Tregoning and Kasten in their official capacities because, as set forth above, as state officers sued in their official capacities, they are not "persons" for purposes of § 1983.

With regard to Plaintiff's claim against Tregoning and Kasten in their individual capacities, as the Fourth Circuit enunciated in *Shaw v Stroud*, 13 F.3d 791 (4th Cir. 1994):

> [S]upervisory liability may attach under § 1983 if a plaintiff can establish three elements. These are: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) "that there was an 'affirmative causal link' between the

supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

*Randall v. Prince George's County, Maryland*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw*, 13 F.3d at 799).

Here, Plaintiff has pleaded very few facts to support her claim of supervisor liability. She mainly relies on the testimony of Defendant Epperson in the matter of *Maryland v. Laderer* before the Circuit Court for Carroll County, Maryland, which she incorporated by reference into her complaint. (ECF No. 2-3.)[11] In that proceeding, Epperson, a Detective in the Carroll County Sheriff's Department, testified that following Plaintiff's arrest, the Carroll County Sheriff's Department changed its policy to ensure that "suspects will not be detained." (*Id.* at 17.) Further, Plaintiff has alleged that Defendant Tregoning is the Carroll County Sheriff and that Defendant Kasten is a Major with the Carroll County Sheriff's Department. (Am. Compl. at 1 and ¶¶ 8, 9.)

In reviewing the sufficiency of Plaintiff's allegations, the Court takes note of the Fourth Circuit's exhortation that "when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Edwards*, 178 F.3d at 244 (quoting *Harrison v. United States Postal Service*, 840 F.2d 1149, 1152 (4th Cir.1988)).

Although Plaintiff has made minimal factual allegations, the Court finds that, taking them all together and construing them in the light most favorable to the Plaintiff, it is able to draw the

---

[11] The Court reiterates that it treats the factual statements—but not legal analysis or legal conclusions—contained in this exhibit as part of the factual allegations of Plaintiff's complaint. These factual statements constitute allegations by Plaintiff and are not received as facts.

reasonable inference that Defendant Tregoning, as the Sheriff for Carroll County, (1) had actual or constructive knowledge that Defendants Epperson and Plazio were his subordinates and were following a departmental policy of detaining suspects even when doing so might violate their Fourth Amendment rights; (2) failed to correct the policy and thereby tacitly authorized it; and (3) was an "affirmative causal link" in the alleged violation of Plaintiff's Fourth Amendment rights by virtue of the fact that he failed to correct the policy. Therefore, the Court finds that Plaintiff has adequately pleaded her § 1983 claim for violation of her Fourth Amendment rights against Defendant Tregoning in his individual capacity.

Further, Defendant Tregoning is not entitled to qualified immunity. Indeed, as the Court stated above, it is clearly established that police officers are not at liberty to arrest citizens absent probable cause. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Further, it is clearly established that a ten-hour stop does not constitute an investigatory stop in a situation like the one at issue here. *Place*, 462 U.S.at 709-10 (1983).

However, with regard to Defendant Kasten, the Court finds that Plaintiff has failed to plead any facts to support her contention that he had actual or constructive knowledge of the policy or even that he was Defendant Epperson or Defendant Plazio's supervisor. Indeed, the Court cannot draw such inferences based on the simple allegation that he was a Major in the Carroll County Sheriff's Department.

The Court now turns to Defendant Tregoning's request that Plaintiff's claim of supervisory liability against him be "bifurcated for all purposes of discovery and trial." (ECF No. 25-1 at 15.) Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court may, "in furtherance of convenience and to avoid prejudice, or when separate trials will be conducive to expedition and economy," order separate trials of any claims or issues.

Here, Tregoning argues that bifurcation is appropriate because it "will allow the Plaintiff to obtain all relevant discovery to which she is entitled from the individual officers, while avoiding the discovery disputes, and inevitable prejudice to the officers, which flow from attempting to explore and adjudicate [the supervisor liability] claims before there is a determination as to liability on the part of any individual officers." (ECF No. 25-1 at 13.)

Plaintiff, on the other hand, "strongly objects to . . . bifurcation." (ECF No. 28 at 11-12.) Specifically, Plaintiff offers that it is in the interest of "judicial economy to hear all counts as to all Defendants together." (*Id.* at 10.) She argues that this case is about a "systemic breakdown of multiple officers, acting in concert to violate Plaintiff's constitutional rights." She further notes that the "depths to which Count XII can reach will only be established through discovery." (*Id.* at 11.)

The Court notes that bifurcation of municipal or supervisory liability claims are common. *See* 1A Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 7.14[B] (4th ed. 2013 suppl.). Indeed, bifurcation allows for more efficient and streamlined proceedings. It also avoids the prejudice against individual defendants that might arise from introducing evidence of prior incidents of unconstitutional police conduct relevant only to the claim of supervisor liability. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 320 (D. Md. 1991).

Having considered the arguments of both parties, the Court finds that bifurcation is warranted. In particular, the Court finds that streamlining the issues and limiting discovery, initially, to the claims against Tregoning's subordinates, i.e. Epperson and Plazio, will favor convenience, expedition, and economy, in addition to avoiding prejudice against Epperson and Plazio. Therefore, bifurcation of the § 1983 claim against Tregoning and a stay of discovery are warranted.

Thus, the Court will grant Defendants Tregoning and Kasten's motion to dismiss or in the alternative to bifurcate Count XII in part and deny it in part. (ECF No. 25.) The motion will be granted insofar as Count XII is dismissed (1) against both Defendants in their official capacity and (2) against Defendant Kasten in his personal capacity. However, the motion will be denied as to Defendant Tregoning in his individual capacity. This remaining claim under Count XII will be bifurcated from the other remaining claims in this case.

### h. State claims against Defendants Epperson and Plazio (Counts I, III, IV, V, VI, VII, XIII)—Notice requirement

Defendants Epperson and Plazio have moved to dismiss all state tort claims based on the fact that Plaintiff failed to give timely notice under the Maryland Tort Claims Act ("MTCA"). Md. Code Ann., State Gov't § 12-106(b)(1) ("A claimant may not institute an action under this subtitle unless: the claimant submits a written claim to the Treasurer . . . within 1 year after the injury to person or property that is the basis of the claim."); (ECF No. 25-1 at 3-4.)

In her complaint, Plaintiff alleged compliance with the statute (Am. Compl. at ¶ 3) and attached a copy of her notice to the Maryland State Treasurer (Am. Compl., Exhibit 6). (*See also* ECF No. 28 at 5.) The Court notes that "[w]hen a defendant attaches a document [such as the notice] . . . to its motion to dismiss, a court may consider it in determining whether to dismiss the compliant if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Beasley v. Arcapita Inc.*, 436 F. App'x 264, 266 (4th Cir. 2011) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). These conditions being met with regard to the notice in the case at bar, the Court will consider it in the context of the present motion to dismiss.

In broad terms, the Maryland Tort Claims Act Md. Code Ann., State Gov't § 12-101 *et seq*., "insulate[s] state employees . . . from tort liability if their actions are within the scope of

employment and without malice or gross negligence." *Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004). The statute operates by "substitut[ing] the liability of the State for the liability of the state employee committing the tort." *Id.* "Accordingly, where the Tort Claims Act is applicable, the injured party will ordinarily be able to recover against the State as long as he or she complies with the procedural requirements of the Tort Claims Act." *Id.* Further, state-employee immunity under the MTCA encompasses both constitutional and intentional torts. *Id* at 310. *But see Benson v. State*, 887 A.2d 525, 532 (holding that "a claim of violation of Article 14 [of the Maryland Declaration of Rights] is not subject to the requirements of the [Maryland Tort Claims Act] because a claim under Article 14 is not compensable in monetary damages").

More specifically, "[u]nder the immunity and non-liability provisions of the MTCA, 'state personnel' are immune from suit and from liability in tort for acts or omissions committed within the scope of their public duties and without malice or gross negligence, and when the State waives its immunity pursuant to the MTCA." *Barbre*, 935 A.2d at 709; Md. Code Ann., Cts. & Jud. Proc. § 5-522.

In the case at bar, the immunity and non-liability provisions of the MTCA apply to Defendants Epperson and Plazio. First, under the MTCA, "'State personnel' means: . . . a sheriff or deputy sheriff of a county . . . ." Md. Code Ann., State Gov't § 12-101(a)(6); *Barbre*, 935 A.2d at 709. Here, Defendants Epperson and Plazio are, respectively, a Detective and Detective Major with the Carroll County Sheriff's Department. (Am. Compl. at 1, 5.) Therefore, they are "State personnel" for purposes of the MTCA. Second, the acts of Defendants Epperson and Plazio that are at issue in this case—namely their seizure and interrogation of Plaintiff—were performed within the scope of their public duties.[12] *See Larsen v. Chinwuba*,

---

[12] The Court notes that the MTCA does not apply where state personnel acted with *malice or gross negligence*. Md. Code Ann., State Gov't § 12-105; Md. Code Ann., Cts. & Jud. Proc. § 5-522(b); *Lee v. Cline*, 863 A.2d 297, 304

832 A.2d 193, 202 (holding that an act committed "within the scope of the public duties of state personnel," § 5-522(b), is one that "was incident to the performance of the duties entrusted to [state personnel] by the employer"); (*Id*. at 5.)  Third, the torts at issue here are torts for which Maryland has waived its immunity pursuant to the MTCA.  *Lee*, 863 A.2d at 310 ("For all of the above-discussed reasons, we hold that under the Maryland Tort Claims Act, if otherwise applicable, encompasses constitutional torts and intentional torts.").  *But see Benson*, 887 A.2d at 532 (holding that "a claim of violation of Article 14 [of the Maryland Declaration of Rights] is not subject to the requirements of the [Maryland Tort Claims Act] because a claim under Article 14 is not compensable in monetary damages").[13]  Thus, the immunity and non-liability provisions of the MTCA apply to Defendants Epperson and Plazio with regard to all the state claims pending against them in this case.

However, the MTCA precludes a claimant from "institut[ing] an action under this subtitle unless: "the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of this claim."  § 12-106(b).  This notice requirement is "a condition precedent to the initiation of an action under the Act." *Johnson v. Maryland State Police*, 628 A.2d 162, 164 (Md. 1993).

Here, Plaintiff sent notice to the Maryland State Treasurer on January 11, 2013.  (Am. Compl.) Further, she has pleaded that "[n]otice of the claims advanced [in her complaint] has

---

(Md. 2004).  However, here, Plaintiff has not alleged and neither Plaintiff nor Defendant Maryland has argued that Defendants Epperson or Plazio acted with either malice or gross negligence.  The Court does not find that the facts as pleaded compel it to make a finding of malice or gross negligence on the part of the Defendants *sua sponte*.  *Cf. Barbre*, 935 A.2d at 714 (In *Barbre*, Plaintiffs had pled that defendant Barbre "acted maliciously and with gross negligence."  The court found that, at the summary judgment stage, "[s]tate personnel are not immune from suit and liability when the plaintiff's complaint *sufficiently* alleges malice or gross negligence.  Therefore, the gravamen on this issue is whether the allegations or gross negligence against Barbre are sufficient.") (Emphasis in original); *Sawyer v. Humphries*, 587 A.2d 467, 474 (Md. 1991) (reversing the Court of Special Appeal's holding that plaintiffs made "bald allegations" of malice with no substantiation and finding that plaintiffs pled sufficient facts to support their allegation that defendant acted with malice).

[13] In this action, Plaintiff seeks only money damages.  (Am. Compl. at 25.)

been provided in a manner that is consistent with the Maryland Tort Claims Act." [14]  (Am. Compl. at ¶ 4.)  However, the acts that form the basis of Plaintiff's state claims against Defendants Epperson and Plazio—Plaintiff's seizure and interrogation—occurred in September 2010.[15]  (Am. Compl. at ¶¶17-26, 35.)  Thus, Plaintiff far exceeded the one-year deadline for filing a notice.

Defendants Epperson and Plazio assert that because Plaintiff's notice "was sent more than two years after the Plaintiff was arrested, interrogated, and charged," she "failed to give timely notice under the [MTCA]" and the state claims against them should be dismissed. (ECF No. 25-1 at 3-4.)  Although Plaintiff maintains that she provided proper notice, she does not explain why it was timely. (ECF No. 28 at 4-5.)  Rather, she offers that "if the Court does find that notice was not made timely under the Maryland Tort Claims Act, . . . she can show good cause for not complying and [establish] that the defense has not been prejudiced."  (*Id.*)

Unfortunately for Plaintiff, the Maryland Court of Appeals has repeatedly held that an action under the MTCA is barred by Plaintiff's failure to comply with the notice requirement. *Barbre*, 935 A.2d at 712; *Johnson*, 628 A.2d at 165; *Simpson v. Moore*, 592 A.2d 1090, 1091-1096 (Md. 1991). The Maryland courts have applied the notice requirement strictly.  *Id.*  Neither good faith, nor lack of prejudice, nor substantial compliance can overcome a Plaintiff's failure to provide written notice to the State treasurer within the one-year period prescribed by the MTCA. *Id.*

---

[14] The Court need not reach the issue of whether the notice mailed by Plaintiff, had it been timely, would have satisfied the notice requirement of § 12-106(b).  The notice provides notes that Plaintiff intends to file suit against the State of Maryland and its employees for "[m]alicious prosecution violation done unto her while she was in trial." (ECF No. 22-2.)  However, the notice also lists the date, time, and location of Plaintiff's *arrest* in the fields for the date, time, and location for the incident that is the basis of the claim.  (*Id*.)  In addition, the notice lists "Corporal Epperson" in the field labeled "Officer name."  (*Id.*)

[15] Although Plaintiff alleges that Defendant Plazio gave false testimony in state court proceedings in February 2012, this act does not form the basis of any of Plaintiff's state claims against Defendants Plazio or Epperson.  (Am. Compl. at ¶¶ 32-33.)

Therefore, the state-law claims against Defendants Epperson and Plazio, namely Counts I, III, IV, V, VI, VII, and XIII, will be dismissed.

### i. State claims against Defendants Holland and Riggio (Counts I, III, IV, V, VI, VII, XIII)—Notice requirement

Defendants Holland and Riggio have moved to dismiss all state-law claims against them "based upon the fact that [Plaintiff] Glover failed to comply with the notice requirement of the Maryland Local Government Tort Claims Act ('LGTCA')." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b) ("[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of claim required by this section is given within 180 days after the injury."); (ECF No. 11-1 at 3-4.)

In her complaint, Plaintiff alleges that "[n]otice *of the claims advanced herein* has been provided in a manner that is consistent with the Maryland Tort Claims Act." (Am. Compl. at ¶ 4 (emphasis added).) The Court understands this allegation to apply to all the claims set forth in the amended complaint, including the state-law claims against Defendants Holland and Riggio. Further, Plaintiff attached a copy of the notice she sent to the Maryland State Treasurer. (Am. Compl., Exhibit 6.) In her response to Defendants Holland and Riggio's motion to dismiss, Plaintiff does not assert that any other notice was sent. (ECF No. 29 at 5.) Therefore, the Court finds it appropriate to consider the issue of notice under the LGTCA at this stage.

The LGTCA provides that "a person may not execute against an employee on a judgment rendered for tortious acts or omissions committed by the employee within the scope of employment . . . [unless] it is found that the employee acted with actual malice." Md. Code Ann., Cts. & Jud. Proc. § 5-302(b). As the Maryland Court of Appeals has explained, "the purpose of the LGTCA is to provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment. The Act affords a remedy to

those injured . . . while ensuring the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." *Rios v. Montgomery County*, 872 A.2d 1, 13 (Md. 2005) (internal citations and quotations omitted). Further, the LGTCA applies to "all torts . . . , including intentional and constitutional torts." *Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. App. 1997). *See also Ross v. Prince George's County*, No. DKC-11-1984, 2012 WL 1204087 at *6-*8 (D. Md. April 10, 2012) (collecting cases).

The LGTCA applies to the state-law counts against Defendants Holland and Plazio. Indeed, the acts that form the basis of Plaintiff's state-law tort claims against Defendants Holland and Riggio—namely their seizure and interrogation of Plaintiff—were carried out within the scope of their employment as an officer and a corporal with the Hampstead Police Department, respectively. (Am. Compl. at 2, ¶¶10, 11.) Further, neither Plaintiff nor Defendant Hampstead has alleged or argued that Defendants Holland or Riggio acted with malice. In addition, the Court does not find that the record compels it to make a finding of malice on the part of the Defendants Holland or Riggio *sua sponte*.

Further, in order to maintain an action under the LGTCA, Plaintiff must comply with the statute's notice requirement. Indeed, as the Maryland Court of Appeals has repeatedly held, "compliance with the [LGTCA's] notice requirement is 'a condition precedent to maintaining an action against a local government or its employees to the extent otherwise not entitled to immunity under the LGTCA.'" *Prince George's County v. Longtin*, 19 A.3d 859, 869 (Md. 2011) (quoting *Rios*, 872 A.2d at 14). *See also Ross* 2012 WL 1204087 at *4 (collecting cases) ("This notice requirement has long been a condition precedent to the claimant's right to maintain a tort action for damages under Maryland law and failure to comply with it will bar such tort claims.") (internal citations omitted).

Specifically, under the LGTCA, Plaintiff must provide written notice within 180 days after the injury stating the time, place, and cause of the injury. Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). Further, the statute provides that "the notice shall be given to the corporate authorities of the defendant local government." § 5-304(c)(4). Here, Plaintiff prepared a written notice but sent it only to the Maryland State Treasurer. (Am. Compl. at ¶ 4.) No notice was ever sent to the corporate authorities of the Town of Hampstead. (*Id.*)[16]

Plaintiff argues that she was excused from the notice requirement pursuant to the provision of the LGTCA that provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

In *Heron v. Strader*, 761 A.2d 56 (Md. 2000), the Court of Appeals held that "[t]he test for whether good cause exists pursuant to § 5-304(c) is whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Id.* at 63 (internal quotations and citations omitted). Applying this standard, in *Bibum v. Prince George's County*, 85 F. Supp.2d 557 (D. Md. 2000), this Court held that a plaintiff who did not know about the formal notice requirement of the LGTCA and filed a complaint against a Prince George's County police officer at the county police station but failed to provide notice as required by the LGTCA lacked "good cause for his failure to comply." *Id.* at 565. *See also Moore v. Norouzi*, 807 A.2d 632, 649 (Md. 2002) (citing *Bibum* with approval). "An ordinarily prudent person in a similar situation," the court explained,

_____

[16] Even if, *arguendo*, the Court treated notice to the Maryland State Treasurer as proper notice for purposes of the LGTCA and even if the Court used the State's filing of *nolle prosequi* as the trigger for the 180-day notice deadline, the notice would still be considerably late, there being 310 days between March 7, 2012 and January 11, 2013.

"would have made his own investigation into the existence of any formal notice requirements or consulted an attorney on the matter." *Id.*

Here, Plaintiff offers that "she *can* show good cause for not complying" but does not actually *do* so. (ECF No. 29 at 5 (emphasis added).) Upon examination of the allegation, the Court is unable to discern good cause for waiving the LTGCA's notice requirement. *See Heron*, 761 A.2d at 63-64 (holding that the pendency of criminal proceedings is not an excuse to the strict notice requirements of the LGTCA). Plaintiff has not alleged giving *any* notice at *any* time to *any* local authorities, and therefore the Court cannot find that "substantial justice" would be accomplished by waiving the notice requirement. *Madore v. Baltimore County*, 367 A.2d 54, 57 (Md. App. 1976). Therefore, Plaintiff's failure to comply with the notice requirements of the LGTCA bar her state-law claims against Defendants Holland and Riggio. The state-law claims against Defendants Holland and Riggio, namely Counts I, III, IV, V, VI, VII, and XIII, will be dismissed.

### j. Malicious prosecution claim (Count II) and abuse of process claim (Count VIII) against Barnes, Daggett, and Galvin

In Counts II and VIII of her complaint, Plaintiff alleges that Defendants Barnes, Daggett, and Galvin (1) maliciously prosecuted her (Am. Compl. at ¶ 47) and (2) are liable for abuse of process because their "prosecution [of Plaintiff] was instituted and continued for some purpose other than to bring the Plaintiff to Justice." (*Id.* at ¶77). The basis for both of these claims is Plaintiff's allegation that Defendants Barnes, Daggett, and Galvin, "in their discretion, decided not to disclose exculpatory evidence containing undeniable constitutional violations of the Plaintiff's rights that would have, and in fact did, after much humiliation and suffering, exonerate the Plaintiff." (ECF No. 30 at 9.)

Defendants Barnes, Daggett, and Galvin have moved to dismiss Counts II and VIII (ECF No. 27-1) on three grounds: (1) the claims are barred by absolute prosecutorial immunity (*Id.* at 6-8); (2) the claims are barred by state personnel immunity (*Id*. at 9-11); and (3) the claims are barred because Plaintiff failed to file proper notice pursuant to the MTCA (*Id.* at 11-12.)  The Court will focus on the first ground as it is dispositive of the claims.

Given that Counts II and VIII are state-law claims, the Court turns to Maryland law to identify the contours of prosecutorial immunity.  In *Gill v. Ripley*, the Court of Appeals held that:

> [A]s a matter of Maryland common law, . . . prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process—evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, and preparing and presenting the State's case in court.

724 A.2d 88, 96 (Md. 1999).[17]  In so holding, the Court in *Gill* adopted the functional approach set forth by the Supreme Court in *Burns v. Reed*, 500 U.S. 478 (1991), and *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). *Gill*, 724 A.2d at 94-96.  This test distinguishes between acts undertaken by a prosecutor in his "role as an advocate for the State" and acts undertaken in the context of other duties, such as administrative or investigative functions.  *Buckley*, 509 U.S. at 273; *Burns*, 500 U.S. at 491.

In *Carter v. Burch*, 34 F.3d 257 (4th Cir. 1994), the Fourth Circuit applied this functional approach to a claim of prosecutorial impropriety involving the alleged withholding of exculpatory evidence.  The court found that "the decision as to whether the evidence was exculpatory and should have been given to defense counsel involved [the prosecutor's] actions as

---

[17] In a footnote, the Court of Appeals noted that "while allegations of malice, such as made in this case, will not defeat the immunity of prosecutors, we leave for another day the question of whether there should be any limit upon immunity.  Arguably, immunity should not apply when a prosecutor engages in extreme conduct, such as deliberately falsifying an indictment or accepting a bribe to file criminal charges." *Gill*, 724 A.2d at 96 n.5.  However, the Court does not find that any of Plaintiff's allegations rise to the level of "extreme conduct" as contemplated in *Gill*.

an advocate of the State. Such a decision was clearly intended by *Imbler* to be the type of prosecutorial function for which absolute immunity should be granted." *Id.* at 262 (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). "The decision whether to turn this evidence over to defense counsel," the court continued, "would have occurred after Carter's arrest, but before his conviction, and is clearly part of the presentation of the State's case." *Id.* at 263.

The Fourth Circuit's ruling in *Carter* is on all fours with the facts in this case. As Plaintiff stated in her response to Defendants' motion to dismiss, the basis of her claims against Barnes, Daggett, and Galvin is that they "decided not to disclose exculpatory evidence." (ECF No. 30 at 9.) Although "[i]t is the Plaintiff's position that this withholding of evidence does not rise to the level of 'advocative' conduct," her position is at odds with the case law in this circuit. (*Id.*)

Plaintiff cites three Supreme Court cases in support of her position. However, none of these support her contention that Defendants Barnes, Daggett, and Galvin do not enjoy absolute immunity for allegedly withholding exculpatory evidence. Plaintiff first cites *Burns,* 500 U.S. 478, in which the Court found that "advising the police in the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process,' that it qualifies for absolute immunity." *Id.* at 493. However, in *Burns*, the prosecutor had advised the police that it was acceptable to question a suspect while she was under hypnosis. *Id.* at 482. The ruling in *Burns* would be relevant to the case at bar if Plaintiff's allegation were that Defendants Barnes, Daggett, and Galvin had advised detectives or deputy sheriffs that it was acceptable to arrest Plaintiff without probable cause or to deny her access to counsel after she had requested it. However, Plaintiff has not alleged such facts.

Second, Plaintiff cites *Buckley v. Fitzsimmons*, 509 U.S. 259. There, the Court found that prosecutors were not entitled to absolute immunity (1) for false statements made in a press conference or (2) for fabricating evidence in the early stages of a criminal investigation. *Id.* With regard to statements made at a press conference, the Court found that "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor . . . . The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Id.* at 277-78. However, statements to the press are not analogous to a prosecutor's decision not to disclose exculpatory evidence to defense counsel, which has a very direct functional tie to the judicial process.

The fabrication of evidence that the Court considered in *Buckley* occurred while police officers and prosecutors were working side-by-side in the early stages of a criminal investigation. 509 U.S. at 262-63. The *Buckley* plaintiff alleged that prosecutors fabricated false evidence related to a bootprint apparently left by the perpetrator at the crime scene. *Id.* at 262. Specifically, the plaintiff alleged that "[a]fter three separate studies . . . were unable to make a reliable connection between the print and a pair of [his] boots . . . [prosecutors and police officers] obtained a 'positive identification' from . . . an anthropologist . . . who was allegedly well known for her willingness to fabricate unreliable expert testimony." *Id.*

In drawing the line between a prosecutor's role as an advocate on the one hand and his investigative functions on the other hand, the Court held that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate not justifiable that, for the same act, immunity should protect the one and not the other." *Id.* (internal quotations and citations omitted).

In *Buckley*, these investigations took place at a time when the grand jury was empaneled "to conduct a more thorough investigation of the crime—not to return an indictment against a suspect whom there was already probable cause to arrest. Buckley was not arrested, in fact, until 10 months after the grand jury had been convened and had finally indicted him." *Id*. at 275. "Under these circumstances," the Court concluded, "the prosecutors' conduct occurred well before they could properly claim to be acting as advocates." *Id.* The Court went on to explain that where prosecutors have "no probable cause to arrest petitioner or to initiate judicial proceedings," their acts are "entirely investigative in character" and are therefore not protected by absolute immunity. *Id.* at 274. "A prosecutor," the Court cautioned, "neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.*

However, the *Buckley* Court also emphasized that a prosecutor's "evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek indictment has been made" is entitled to "the protections of absolute immunity." *Id.* at 273. And, in the case at bar, Defendants Barnes, Daggett, and Galvin are not alleged to have participated in the "preliminary investigation of an unsolved crime." *Id.* at 275. Rather, Plaintiff has alleged that they failed to disclose exculpatory evidence. Specifically, Defendants received evidence assembled by the Hampstead Police Department and the Carroll County Sherriff's Department and evaluated it to determine what, if any, charges they should bring and later what, if any, evidence they should disclose to Plaintiff. Therefore, the Court does not read *Buckley* as supporting Plaintiff's contention that Defendants Barnes, Daggett, and Galvin do not enjoy absolute immunity for their alleged decision not to turn over exculpatory evidence.

Finally, Plaintiff cites *Kalina v. Fletcher*, 522 U.S. 118 (1997), in which the Court found that a prosecutor was not entitled to absolute immunity for making a false statement of fact in an affidavit supporting an application for an arrest warrant. *Id.* Specifically, the prosecutor in *Kalina* prepared a "Certification for Determination of Probable Cause," which is a sworn statement summarizing the evidence supporting a charge. *Id.* at 120-21. The Court noted that "neither federal nor state law made it necessary for the prosecutor to make that certification" and that, in fact, "[i]n doing so, [the prosecutor] performed an act that any competent witness might have performed." *Id.* at 129-130. The Court thus concluded that because the function of "giving sworn testimony is that of a witness" and not that of an advocate on behalf of the State, it is not protected by absolute immunity. *Id.* By contrast, in the case at bar, Defendants Barnes, Daggett, and Galvin were acting as prosecutors when they allegedly failed to disclose exculpatory evidence. Indeed, as the Court noted in *Buckley*, the "professional evaluation of the evidence assembled by the police" is part of a prosecutor's role as "an advocate for the State." 509 U.S. at 273.

In light of the cases discussed, the Court therefore finds that Defendants Barnes, Daggett, and Galvin are entitled to absolute prosecutorial immunity with regard to their alleged failure to disclose exculpatory evidence to Plaintiff. This conduct being the basis of Plaintiff's claims against Defendants (ECF No. 30 at 9), Defendants' motion to dismiss (ECF No. 35) will be granted to the extent that Counts II and VIII will be dismissed.

## IV. CONCLUSION

Accordingly, an order shall issue (A) finding Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative for a more definite statement (ECF No. 4) MOOT and DENYING it as such; (B) finding Holland and Riggio's motion to dismiss (ECF No. 11) MOOT and DENYING it as such; (C) GRANTING in part and DENYING in part Epperson, Kasten, Plazio, and Tregoning's motion to dismiss or in the alternative to bifurcate (ECF No. 25); (D) GRANTING in part and DENYING in part Holland and Riggio's motion to dismiss (ECF No. 26); (E) GRANTING Barnes, CCSAO, Daggett, Galvin, and Maryland's motion to dismiss (ECF No. 27); and (F) GRANTING Hampstead's motion to dismiss (ECF No. 35).


Dated this  2nd  day of April, 2014.

                                                    BY THE COURT:


                                            _____/s/_____
                                            James K. Bredar
                                            United States District Judge